UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHY MCGUIRE,

                    Plaintiff,

          v.

THE STATE OF WASHINGTON,
DEPARTMENT OF TRANSPORTATION,
KERMIT WOODEN, NIKI PA VLECHEC
and TAM LE,

                    Defendants.

CASE NO. C09-5198RJB

**ORDER ON
DEFENDANTS'
MOTION FOR
SUMMARY JUDGMENT
and MOTION TO
STRIKE**

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Dkt. 19) and Defendants' Motion to Strike (Dkt. 36). The Court has reviewed the pleadings filed regarding the motions and the record herein.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2009, Plaintiff filed this case, asserting that Defendants improperly demoted and then discharged her from the Washington Department of Transportation ("DOT"). Dkt. 1, at 2-3.

### A.      BASIC FACTS

In the mid-1980's Plaintiff began working for Washington State in the Human Resources Department. Dkt. 28, at 1. In 1998, she transferred into a DOT human resources field office, first holding the position of a Human Resources Consultant 1 ("HRC1"). Dkt. 28, at 2. She

1  eventually received a promotion to Human Resources Consultant 2 ("HRC2"). Dkt. 28, at 2-3.

2  Plaintiff states that while she worked in the field office, her duties required her to be a "jack of

3  all trades." Dkt. 28, at 2. She states that she had exposure to a wide variety of duties from

4  providing information to managers to direct involvement with the termination of employees.

5  Dkt. 28, at 2.

6        In 2001, Plaintiff transferred to DOT's main human resources department in Olympia,

7  Washington. Dkt. 28, at 2. Plaintiff's position was reallocated downward twice while at the

8  main office. Dkt. 28, at 3. First, she reallocated back to HRC1. Dkt. 28, at 3. Adrienne

9  Sanders, one of Plaintiff's supervisors until 2006, stated that Plaintiff's position was reallocated

10  downward based on Plaintiff's answers in a questionnaire regarding her duties. Dkt. 20, at 2.

11  Plaintiff's pay became "Y-rated," which meant that though her salary would not be reduced, she

12  would not receive any pay increases until her HRC1 wages exceeded her Y-rated salary. Dkt.

13  28, at 3. Plaintiff states that even though her duties did not change, on August 29, 2002, she was

14  again downgraded to the position of Human Resources Consultant Assistant. Dkt. 28, at 3. Ms.

15  Sanders states that Plaintiff's position was downgraded because "the requirements of her

16  position did not require a professional level of skill and knowledge." Dkt. 20, at 2.

17        Plaintiff states that while at the main office, she spent around 65% of her time working

18  on DOT's human resources computer system - "Human Management Resource System." Dkt.

19  28-2, at 8. Her duties included data entry and data analysis - checking, verifying, and resolving

20  issues "before processing personnel actions such as: new hires, promotions, transfers,

21  terminations, non-permanent appointment, etc." Dkt. 28-2, at 8. She also monitored "salary

22  placement[s], periodic increment date[s], . . . and leave without pay." Dkt. 28-2, at 8. Plaintiff

23  would input information about newly hired people, including whether they were eligible for

24  benefits. Dkt. 20, at 5. She also served as backup for the human resources benefits administrator

25  and the computer system's security administrator. Dkt. 28-2, at 8. She states that she trained

26  newly hired people. Dkt. 28, at 3. She spent 25% of her time working with DOT managers

27  regarding personnel policies and procedures. Dkt. 28, at 3 and Dkt. 28-2, at 8. Plaintiff was one

28

1  of two Human Resources Consultant Assistants in her department.  Dkt. 21, at 3.

2          Ms. Sanders states that Plaintiff had difficulty with job performance.  Dkt. 20, at 3.  She

3  states that Plaintiff had accuracy problems with the data she inputted, one of her core duties.

4  Dkt. 20, at 3.  Ms. Sanders also states that Plaintiff's written work was deficient.  Dkt. 20, at 3-4.

5   Ms. Sanders states that accuracy issues and issues with Plaintiff's writing culminated in the

6  issuance of a memo of understanding on September 18, 2006.  Dkt. 20, at 4.  She states that

7  Plaintiff made sufficient improvement to keep her job, but still had to have third parties review

8  all Plaintiff's written communications.  Dkt. 20, at 4.

9          In late 2007, a decision was made to reorganize the DOT's Human Resources office.

10  Dkt. 21, at 3.  The two Human Resources Consultant Assistant positions (one of which Plaintiff

11  held) were reclassified into HRC 1 positions.  Dkt. 21, at 3.  About 50% of the time in these new

12  positions would be data entry, and 50% would be an active consulting component.  Dkt. 21, at 3.

13  Niki Pavlicek, one of Plaintiff's supervisors, stated that she felt that neither Plaintiff nor the

14  other Human Resources Consultant Assistant were eligible to "be promoted to the new position

15  based upon the alteration in knowledge, skills, and ability" that was required of the new position.

16  Dkt. 21, at 3.  Ms. Pavlicek stated that she thought the "consulting component of the job was not

17  a technical skill, but rather a talent that would be sought during interviews, whereas the data

18  entry component was something that it would be expected that an HRC hire would be able to

19  train to do."  Dkt. 21, at 3-4.  Kermit Wooden, the Director of DOT's Human Resources Office,

20  states that the decision to reclassify the positions was an effort to increase the efficiency of the

21  entire office, as several different people were performing similar work.  Dkt. 22, at 2-3.

22          On October 15, 2007, Plaintiff's manager, Tam Le, recommended that her position be

23  upgraded to HRC 1.  Dkt. 28-2, at 8.

24          On January 16, 2008, Plaintiff was given notice of her layoff, but was offered a position

25  as a Human Resources Consultant Assistant 2 with the office responsible for coordinating the

26  agency's drug and alcohol program.  Dkt. 21, at 3-4.  She accepted the position, but a few days

27  later, on January 26, 2008, she sent a notice that she was retiring.  Dkt. 21-3.  Plaintiff states that

28

ORDER
Page 3

1    "due to the stressful work environment" she felt forced to retire.  *Id.*  She also points out that she

2    did not think the new position offered a flexible schedule.  *Id.*  Defendants state that the position

3    did have flexible hours.  Dkt. 21, at 4.  Defendants state that the other Human Resources

4    Consultant Assistant accepted the position after Plaintiff declined it.  Dkt. 21, at 4.

5          Plaintiff did not apply for the newly reclassified HRC position.  Dkt. 22, at 4.

6    Defendants maintain that despite the fact that Plaintiff had held a position as an HRC 1 in the

7    past, "not all of the positions are the same."  Dkt. 22, at 4.  They emphasize that the reclassified

8    position was going to have a heavy emphasis on communication skills, an area in which Plaintiff

9    struggled.  Dkt. 22, at 4.  Her official Notice of Layoff stated that she was "ineligible to continue

10   in the position once it has been reallocated because [she did] not possess the required knowledge,

11   skill and abilities required of the position."  Dkt. 22-2, at 1.

12         Plaintiff states that as she entered data, she realized that Kermit Wooden, Director of

13   Human Resources for DOT, had made the decision to start paying on call/temporary workers

14   health insurance benefits.  Dkt. 28, at 4.  She asserts that it was not her job to address or report

15   this issue, but she felt that under the relevant regulations these workers did not immediately

16   qualify for benefits.  Dkt. 28, at 4.  She states that she began to emailing her concerns in

17   September of 2007.  Dkt. 28, at 6.  Plaintiff further notes that after she began to document her

18   concerns, her supervisor began keeping a log of "supposed data entry 'errors'" in October of

19   2007.  Dkt. 28, at 7.  She states that Defendants also began to monitor her productivity at the

20   same time.  Dkt. 28, at 7.  She states that they appeared to have been monitoring the number of

21   times she inspected insurance issues.  Dkt. 28, at 7.

22         Mr. Wooden acknowledges that Plaintiff raised issues regarding benefits given to part

23   time and temporary workers for several months prior to her resignation.  Dkt. 22, at 5.  He states

24   that there was extensive discussion of these issues at "the high levels of DOT," of which Plaintiff

25   would not have been aware.  Dkt. 22, at 5.  He asserts that "there were issues related to ongoing

26   litigation involved with part time employees and confusion over application of unclear rules."

27   Dkt. 22, at 5.  He states that Plaintiff's job did not include making decisions regarding who

28

ORDER
Page 4

1  qualifies for health benefits.  Dkt. 29-3, at 16.  Mr. Wooden stated that he did not know of

2  Plaintiff's official whistleblower complaint, filed with the State Auditors Office, until after

3  January 28, 2008.  Dkt. 22, at 5.

4  **B.    PROCEDURAL BACKGROUND**

5  In her Complaint, Plaintiff makes federal claims against the Defendants for violation of

6  the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 623, *et seq*., and for

7  retaliation under the First Amendment of the United States Constitution, actionable under 42

8  U.S.C. § 1983.  Dkt. 1, at 3.  She makes several state law claims including:  a claim under the

9  Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq*., a claim for "whistle

10  blower protection as adopted for Washington State Employees," a claim for termination in

11  violation of public policy, and claims for intentional and negligent emotional distress.  *Id*.

12  Plaintiff seeks monetary damages, costs, and attorneys' fees.  *Id*.

13  **B.    PENDING MOTIONS**

14  Defendants move to summarily dismiss Plaintiff's federal claims arguing that:  1) the

15  state and DOT are immune from Plaintiff's ADEA and 42 U.S.C. § 1983 claims due to the

16  Eleventh Amendment, and 2) Plaintiff's ADEA claims against the individual Defendants should

17  be dismissed because individuals are not liable under the ADEA.  Dkt. 19.  Defendants argue

18  that Plaintiff's First Amendment claim against the individual Defendants should be dismissed

19  because her speech was made as an employee and not a citizen, and there was no adverse

20  employment decision as a result of her speech.  *Id*.  Plaintiff responds, arguing that she has a

21  viable First Amendment claim against the individual defendants because raising issues about

22  benefits for on call workers was not a part of her job duties and she raised the issue repeatedly

23  before her position was reclassified.  Dkt. 27.

24  As to Plaintiff's state law claims, Defendants argue that Plaintiff's WLAD claim should

25  be dismissed because she fails to met two prongs of the test: 1) she did not apply for and was not

26  qualified for the promotion, and 2) that she was replaced by a younger person because the

27  position that she held was not the same as the newly created position.  Dkt. 19.  Defendants

28

ORDER
Page 5

1   argue that Plaintiff's negligent and intentional infliction of emotional distress claims against the

2   State and DOT should be dismissed under the Eleventh Amendment, and that to the extent that

3   she is asserting such claims against the individual Defendants, they should be dismissed as

4   subsumed by her discrimination claims.  *Id.*  Defendants argue that Plaintiff's claim for wrongful

5   discharge in violation of public policy should be dismissed because she was not discharged.  *Id.*

6   Defendants argue that her constructive discharge claim should be dismissed because Plaintiff did

7   not establish that the conditions of her job were so difficult or unpleasant that a reasonable

8   person in her shoes would have resigned.  *Id.*  Defendant lastly argues that Plaintiff's whistle

9   blower claim, brought under RCW 42.40 should be dismissed because as a matter of fact, she

10  was not a whistle blower, and no retaliation could have occurred.  *Id.*

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT - STANDARD

13          Summary judgment is proper only if the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15  genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

16  law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the

17  nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

18  on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

19  323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could

20  not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v.*

21  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

22  significant probative evidence, not simply "some metaphysical doubt.");  *See also* Fed. R. Civ. P.

23  56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

24  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

25  of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v.*

26  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

27          The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B.  ELEVENTH AMENDMENT IMMUNITY AND CLAIMS ASSERTED AGAINST THE STATE AND DOT

 "As the Supreme Court has applied the Eleventh Amendment, an unconsenting State is

immune from suits brought in federal courts by her own citizens as well as by citizens of another

State." *Pittman v. Oregon Employment Dept.,* 509 F.3d 1065, 1071 (9th Cir. 2007) (*internal*

*quotations omitted*). There are exceptions to Eleventh Amendment immunity. *Id*. For example,

sovereign immunity does not bar suits for prospective injunctive relief against individual state

officials acting in their official capacity. *Id*. Additionally, Congress, in some circumstances, can

abrogate Eleventh Amendment immunity. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62 (2000).

### 1.  *Federal Claims - ADEA and First Amendment*

Defendants properly point out that pursuant to the Eleventh Amendment, the state, its

agencies, and Defendants named in their official capacities have immunity from suit as to

Plaintiff's ADEA claim and First Amendment claim brought under 42 U.S.C. § 1983. Dkts. 19

and 32 (*citing Kimel v. Florida Bd. Of Regents*, 528 U.S. 62 (2000) (holding Eleventh

Amendment immunity applies to State and State agencies for ADEA claims)). Plaintiff does not

meaningfully respond to the argument that her federal claims (the ADEA claim and First

Amendment claim brought under 42 U.S.C. § 1983) can not be brought against the State or its

agencies. To the extent that she makes such claims, they should be dismissed.

### 2.  *State Claims*

1

"[S]tate law claims are barred by the Eleventh Amendment, which precludes the

2

adjudication of pendent state law claims against nonconsenting state defendants in federal

3

courts." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

4

The State and DOT move for dismissal of Plaintiff's negligent and intentional infliction

5

of emotional distress claims based upon Eleventh Amendment immunity. Dkt. 19 and 32.

6

Plaintiff does not oppose dismissal of these claims. They should be dismissed under the

7

Eleventh Amendment against the State and DOT.

8

The State and DOT do not move for dismissal of the remaining state law claims based on

9

Eleventh Amendment immunity.

10

**B.      FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS**

11

1.    ADEA

12

Liability under the ADEA is limited to employers. *Miller v. Maxwell's Intern. Inc*., 991

13

F.2d 583, 587 (9th Cir. 1993). Individual employees are not liable under the ADEA. *Id.* To the

14

extent that Plaintiff makes an ADEA claim against the individual Defendants, her claim should

15

be dismissed.

16

2.    Retaliation in Violation of the First Amendment brought under 42 U.S.C.
§ 1983

17

"[T]he Eleventh Amendment does not erect a barrier against suits to impose individual

18

and personal liability on state officials under § 1983," however. *Hafer v. Melo*, 502 U.S. 21, 30-

19

31 (1991). Accordingly, the Defendants' Motion for Summary Judgment dismissal of the First

20

Amendment claim, brought under § 1983 against the individual Defendants, in their personal and

21

individual capacities, should not be granted the basis of Eleventh Amendment Immunity.

22

A private right of action exists against government officials who, acting under the color

23

of state law, violate federal constitutional or statutory rights. *Jackson v. City of Bremerton*, 268

24

F.3d 646, 650 (9th Cir. 2001) (*citing* 42 U.S.C. § 1983). Plaintiff here alleges that the individual

25

Defendants retaliated against her for exercising her First Amendment rights. Dkt. 1. In order to

26

decide whether there is sufficient evidence to allow a claim of retaliation in violation of the First

27

Amendment, five questions must be answered: (a) whether the plaintiff spoke on a matter of

28

public concern; (b) whether the plaintiff spoke as a private citizen or public employee; (c)
whether the plaintiff's protected speech was a substantial or motivating factor in the adverse
employment action; (d) whether the state had an adequate justification for treating the employee
differently from other members of the general public; and (e) whether the state would have taken
the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062,
1070 (9th Cir. 2009). Plaintiff bears the burden to establish the first three, then the burden shifts
to the employer. *Id.,* at 1071-72.

a. *Matter of Public Concern?*

"Speech involves a matter of public concern when it can fairly be considered to relate to
any matter of political, social, or other concern to the community." *Eng,* at 1070 (*internal
citations omitted*).

The Defendants do not contest that raising issues regarding improper overpayment of
benefits to public employees is a matter of public concern.

b. *Private Citizen or Public Employee?*

"Statements are made in the speaker's capacity as citizen if the speaker 'had no official
duty' to make the questioned statements, or if the speech was not the product of 'performing the
tasks the employee was paid to perform.'" *Eng,* at 1071 (*quoting Posey v. Lake Pend Oreille
School Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008)).

Defendants contest Plaintiff's assertion that she was speaking as a private citizen when
she raised the issues regarding the benefits being given to on-call employees. Dkt. 19. Review
of the record indicates that there are issues of fact as to whether Plaintiff's job responsibilities
included raising issues regarding these benefits. Plaintiff spent a majority of her time on data
entry and data analysis. Dkt. 28-2, at 8. That data analysis included checking, verifying, and
resolving issues before processing personnel actions. *Id.* She also monitored salary rates and
leave. *Id.* Plaintiff would input information about newly hired people, including whether they
were eligible for benefits. Dkt. 20, at 5. Mr. Wooden, the Human Resources Director,
acknowledges that Plaintiff's job did not include making decisions regarding who qualifies for

1    health benefits. Dkt. 29-3, at 16. Further, Defendants do not contest that it was not her job to

2    report problems of benefits given to on-call workers. Dkt. 32. In a summary judgment motion,

3    the facts must be viewed in a light most favorable to Plaintiff as to her employment

4    responsibilities. *Eng,* at 1071 (noting that if the facts demonstrate an official duty to utter the

5    speech at issue, then the speech is unprotected, and qualified immunity should be granted).

6    There are sufficient issues of fact to deny summary judgment on this portion of the test.

7                              c.       *Speech Was a Substantial or Motivating Factor in the Adverse*
                                        *Employment Action?*
8
9              The free speech cases in which the Ninth Circuit has held that circumstantial evidence

10   created a genuine issue of material fact on the question of retaliatory motive, the plaintiff, in

11   addition to producing evidence that his employer knew of his speech, produced additional

12   evidence of at least one of the following three types. *Keyser v. Sacramento City Unified School*

13   *Dist.*, 265 F.3d 741, 751 (2001).

14            First, we have held that a plaintiff created a genuine issue of material fact where
              he produced the additional evidence that the proximity in time between the
15            protected action and the allegedly retaliatory employment decision was one in
              which a jury logically could infer that the plaintiff was terminated in retaliation
16            for his speech. Second, we have held that a plaintiff created a genuine issue of
              material fact where he produced the additional evidence that his employer
17            expressed opposition to his speech, either to him or to others. Third, we have
              held that a plaintiff created a genuine issue of material fact where he produced the
18            additional evidence that his employer's proffered explanations for the adverse
              employment action were false and pretextual.

19   *Id.* at 751-752 (*internal quotation marks and citations omitted*).

20             Though thin, there are issues of fact as to whether Plaintiff's speech motivated

21   Defendants' decision to reallocate her position. First, construing the facts in light most favorable

22   to Plaintiff, she last raised her concerns within a short period of time (a few months) from when

23   the decision was made to reallocate her position. Dkt. 22, at 5. Defendants point out that they

24   knew of her opinion for at least a year prior to the reallocation and her position was not the only

25   position reallocated. Dkt. 19. That, however, does not necessarily negate the fact that her

26   position was reallocated due to an improper motive. It appears that Plaintiff had begun to

27   document her concerns in September of 2007 and was raising her concerns more and more

28

1   forcefully.  Dkt. 28-2, at 21-26.  Plaintiff was preemptively told in her notice that she was not

2   qualified for the reallocated position (Dkt. 22-2, at 1) despite the fact that she had held the

3   position before.  Plaintiff has produced sufficient "additional evidence that the proximity in time

4   between the protected action and the allegedly retaliatory employment decision was one in

5   which a jury logically could infer that the plaintiff was terminated in retaliation for [her]

6   speech."  *Keyser,* at 751.

7        Secondly, Plaintiff has shown that not only did Defendants know of her opinion

8   regarding the payment of these benefits, but that they opposed her speech.  *Id.*; Dkt. 22, at 5.

9   There are sufficient issues of fact as to this element to deny Defendants' motion for summary

10  judgment.

11              d.      *State Had an Adequate Justification for Treating the Plaintiff
                        Differently from Other Members of the General Public?*

12       Parties do not meaningfully address this element.

13              e.      *State Would Have Taken the Adverse Employment Action Even
14                      Absent the Protected Speech?*

15       The final element to be decided in determining whether there are issues of fact on

16  Plaintiff's First Amendment retaliation claim, is whether the government can demonstrate that it

17  would have reached the same adverse employment decision even in the absence of the

18  employee's protected conduct.  *Eng,* at 1072.  In other words, the government may avoid liability

19  by "showing that the employee's protected speech was not a but-for cause of the adverse

20  employment action."  *Id., (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S.

21  274, 287 (1977)).  This question "asks whether the adverse employment action was based on

22  protected and unprotected activities, and if the state would have taken the adverse action if the

23  proper reason alone had existed."  *Id*. (*internal citations omitted*).

24       The Defendants argue that even if the Court finds that there are issues of fact regarding

25  whether Plaintiff spoke out as a citizen, and whether there is evidence in the record of an

26  improper motive behind the reclassification of her position, there is evidence that Defendants

27  would have still reclassified Plaintiff's position.  Dkt. 32.  Defendants state that they reallocated

28

ORDER
Page 11

1    the position to "create efficiencies with limited resources." *Id.* Plaintiff has shown that there are

2    issues of fact as to whether Defendants would have reallocated her position in the absence of an

3    improper motive and that they discouraged her from applying for the position. In any event, the

4    Ninth Circuit has held that the "*Mt. Healthy* but-for causation inquiry is purely a question of

5    fact." *Id.* Accordingly, summary judgment on this issue should be denied.

6          **C.    STATE LAW CLAIMS**

7               1.    <u>WLAD</u>

8          Plaintiff brings a claim against Defendants for violation of her right to be free from

9    discrimination based upon her age pursuant to WLAD. Dkt. 1.

10         The State and DOT fail to raise Eleventh Amendment immunity to Plaintiff's WLAD

11   claim. Even presuming that the State and DOT did intend to raise Eleventh Amendment

12   immunity, unlike in the federal anti-discrimination statutes, "[a] supervisor acting in the interest

13   of an employer who employs eight or more people can be held individually liable for his or her

14   discriminatory acts" under WLAD. *Brown v. Scott Paper Worldwide Co.*, 143 Wash.2d 349, 358

15   (2001). Accordingly, the merits of this claim will be addressed.

16         Washington courts have largely adopted the burden shifting scheme announced in

17   *McDonnell Douglas* to claims of employment discrimination cases brought under the WLAD.

18   *See Grimwood v. University of Puget Sound*, 110 Wash.2d 355, 362 (1988)(applying the

19   *McDonnell Douglas* test to claim of employment discrimination brought under WLAD);

20   *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005)(noting

21   Washington's employment discrimination law largely parallels federal law under Title VII, and

22   so treatment of a plaintiff's Title VII claim thus applies also to his similar claim under the

23   WLAD); *Hernandez v. Space Labs Medical Inc.*, 343 F.3d 1107 (9th Cir. 2003)(applying

24   *McDonnell Douglas* burden shifting test to discrimination claim brought under Title VII and the

25   WLAD).      The first step of the *McDonnell Douglas* test requires that plaintiff establish a

26   prima facie case of discrimination. *Id.* A plaintiff must establish that (1) she belongs to a

27   protected class, (2) she was qualified for the position (she was performing her job in a

28

satisfactory manner), (3) she was subjected to an adverse employment action, and (4) she was replaced by a person outside the protected class. *See Coghlan* at 1094; *McDonnell Douglas* at 802. In the second step of the *McDonnell Douglas* test, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* In the last step of the *McDonnell Douglas* test, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *McDonnell Douglas* at 802.

Defendants acknowledge that Plaintiff meets the first and third prong of the prima facie test. Defendants argue that she was not qualified for the promotion (element two) and she was not replaced by someone outside the protected class (element four). Dkts. 19 and 32. Parties do not address the other prongs of the burden shifting test.

There are issues of fact as to whether Plaintiff was qualified for the reallocated position. Defendant points to job evaluations which are critical of Plaintiff's communication skills. Dkts. 19 and 32. Defendants state that they did not think she had the communication or data entry skills for the reclassified position. Dkt. 21, at 3. Plaintiff counters with evidence that she had good job evaluations, and she had already held a position similar to the newly reallocated position. Dkt. 28, at 2. Plaintiff's showing is sufficient to deny summary judgment as to this element.

Defendants' motion regarding the fourth element should also be denied. Defendant argues that she was not "replaced" by someone younger because her position was eliminated. Dkt. 19. Defendants do not dispute that someone substantially younger than Plaintiff was given the reallocated position. Moreover, Defendants do not dispute that Plaintiff was told, both verbally and in writing that she was not qualified for the reallocated position, even though she had held a similar position in the past. Defendants make much of the fact that Plaintiff did not formally apply for the newly allocated position. Plaintiff made a sufficient showing that such

1    application would be futile due to the letter she received and the discussions with her

2    supervisors.  "Courts have generally held that the failure to formally apply for a job opening will

3    not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as

4    long as the plaintiff made every reasonable attempt to convey his interest in the job to the

5    employer." *See E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 348-49 (3rd Cir. 1994).  This is

6    true in failure to promote cases.  *Id.* (*citing Holsey v. Armour & Co.*, 743 F.2d 199, 208-09 (4th

7    Cir.1984)(where employee was never asked to fill out an application, the employer had no blacks

8    in sales positions, and had actively discouraged black applicants, casual inquiry into the

9    possibility of promotion to a sales job sufficient for application); *Paxton v. Union Nat'l Bank*,

10   688 F.2d 552, 568 (8th Cir.1982) (where vacancy not posted and plaintiff did not hear about it

11   from any other source until the position was filled, expression of a general desire to advance in

12   bank was sufficient for application)).  This is also true in failure to hire cases.  *Id.* (*internal

13   citations omitted*).   There are sufficient issues of fact as to whether she "replaced" by someone

14   younger.

15              Defendants' motion to dismiss Plaintiff's WLAD claim should be denied.

16                   2.    Termination in Violation of Public Policy and Constructive Discharge

17              "Washington law does not recognize a cause of action for constructive discharge; rather

18   the law recognizes an action for wrongful discharge which may be either express or

19   constructive." *Snyder v. Medical Service Corp. of Eastern Washington*, 145 Wash.2d 233, 238

20   (2001).  "A claim for wrongful discharge in violation of public policy may arise when an

21   employer discharges an employee for reasons that contravene a clear mandate of public policy."

22   *Korslund v. Dyncorp Tri-Cities Services, Inc*., 156 Wash.2d 168, (2005)(*citing Gardner v.

23   Loomis Armored, Inc.,* 128 Wn.2d 931, 941 (1996)).  The discharge may be either "express" or

24   "constructive."  *Id.*  There are four elements to analyze for a wrongful discharge in violation of

25   public policy claim:  (1) the existence of a clear public policy (the clarity element), (2)

26   discouraging the conduct in which Plaintiff engaged would jeopardize the public policy (the

27   jeopardy element), (3) the public-policy-linked conduct caused the dismissal (the causation

28

1  element), and (4) there must not be an overriding justification for the dismissal (the absence of

2  justification element).  *Gardner* at 941.

3          Defendants State and DOT do not expressly move for dismissal of the termination in

4  violation of public policy and constructive discharge claims based upon Eleventh Amendment

5  immunity.  Parties do not address whether a "constructive" termination in violation of public

6  policy claim could be asserted against supervisors.  Defendants argue that termination in

7  violation of public policy claims in Washington must be based upon a termination.  Dkt. 19

8  (*citing White v. State*, 131 Wash.2d 1, 18 (1997)(holding that a transfer is not sufficient to

9  constitute a "termination").  Defendants point out that plaintiff was offered a transfer, took the

10  position, and then quit.  Plaintiff argues that she was constructively discharged.  Dkt. 27.

11  Defendant's Reply argues that Plaintiff does not respond, and then states that "the State reiterates

12  its argument that since Ms. McGuire resigned, she is not a member of the class that can raise a

13  wrongful discharge in violation of public policy claim."  Dkt. 32, at 10.   Neither party addresses

14  the Washington Supreme Court's holding in *Snyder* and *Korslund*.

15          Defendants do not address the first, second, or fourth element of the *Gardner* test. The

16  third element of the *Gardner* test is that the public-policy-linked conduct caused the dismissal.

17  Defendants, to some extent make arguments regarding causation.  They argue that Plaintiff was

18  not constructively discharged because they did not make the conditions at work objectively

19  intolerable. Dkt. 19.  Washington cases generally describe constructive discharge as involving

20  deliberate acts by the employer that create objectively intolerable conditions, thus forcing the

21  employee to quit or resign. *Korslund*, at 179.   In *Korslund* the Washington Supreme Court found

22  that "an employee who is forced to permanently leave work for medical reasons may have been

23  constructively discharged.  Deliberately creating conditions so intolerable as to make the

24  employee so ill that he or she must leave work permanently is functionally the same as forcing

25  the employee to quit." *Id.*  The Court went on to dismiss the plaintiff's termination in violation

26  of public policy claim on other grounds.  *Id.*

27          Plaintiff fails to point to sufficient evidence in the record that the State or DOT created

28

ORDER
Page 15

"objectively intolerable conditions" over "public-policy-linked conduct" such that a reasonable person would quit.  Plaintiff points to her testimony and resignation letter which indicates that she was quitting "due to the stressful work environment" and the fact that she did not think the position she briefly accepted had flexible hours.  Dkt. 21-3.  The position Plaintiff briefly accepted in the agency's drug and alcohol program was not in the same department as her old one, negating her claim that her work environment was stressful.  Defendants contend that she did not even inquire into whether the new job had flexible hours.  Moreover, Plaintiff fails to point to any evidence in the record that her decision to quit was related to her "public-policy-linked conduct."  Defendants' motion to summarily dismiss Plaintiff's constructive termination in violation of public policy claim should be granted.

### 3.    Termination in Violation of Whistle Blower Statute

Prior to the 2008 amendments, RCW 42.040.020(8) defined a "whistleblower" as an "employee who in good faith reported, or who was believed to have reported, alleged improper governmental action to the auditor . . . ."  Plaintiff does not dispute that she filed her whistle blower complaint with the state auditor after she resigned.  She concedes that the timing and manner of her reporting eliminates her from 42.40.020(8)'s protections.  Dkt. 27.  She argues that a section "(b)" of the law which further defines a "whistle blower" as "(b) an employee who in good faith identifies rules warranting review or provides information to the rules review committee" may apply to her.  Dkt. 27.  Plaintiff makes no showing that she "identified rules warranting review" to the "rules review committee."  Her claim under RCW 42.40 should be dismissed.

### 4.    Intentional and Negligent Emotional Distress

Plaintiff failed to contest Defendants' motion to summarily dismiss her intentional and negligent emotional distress claims as assert against all Defendants.  Defendants' motion as to these claims should be granted and they should be dismissed.

### D.    MOTION TO STRIKE

Defendants move to strike the Supplemental Declaration in Support of Plaintiff's motion

1   (Dkt. 34).  Dkt. 36.  Defendants argue that Exhibits 1, 3, 4, and 5 are not relevant to the issues

2   raised in the summary judgment.  *Id.*  For the purposes of this motion alone, Defendants' motion

3   to strike Exhibits 1, 3-5 is granted.  The pleadings were not needed to decide the motion.

4   Defendant's motion to strike Exhibit 2 to the supplemental declaration is denied, as to this

5   motion alone.  Although unnecessary to decide the motion, the pleadings are of limited

6   relevance.

7                                    **III.    ORDER**

8          It is hereby **ORDERED** that:

9   •     Defendants' Motion for Summary Judgment (Dkt. 19) is **GRANTED** as to the following

10         claims:

11         •      ADEA as to all Defendants,

12         •      Retaliation for exercise of First Amendment rights as to the State and DOT,

13         •      Constructive termination in violation of public policy as to all Defendants,

14         •      Termination in violation of Washington's Whistle Blower statute, RCW

15                42.040.020, as to all Defendants,

16         •      Intentional and Negligent Infliction of Emotional Distress as to all Defendants,

17  •     Defendants' Motion for Summary Judgment (Dkt. 19) is **DENIED** as to the following

18         claims:

19         •      Retaliation for exercise of First Amendment rights as to the individual

20                Defendants,

21         •      WLAD claim as to the individual Defendants; and

22  •     Defendants' Motion to Strike (Dkt. 36) is **GRANTED** as to Exhibits 1, 3, 4, and 5 of the

23         Supplemental Declaration in Support of Plaintiff's motion (Dkt. 34); and **DENIED** as to

24         Exhibit 2.

25

26

27

28

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 26th day of April, 2010.

Robert J Bryan
United States District Judge

ORDER
Page 18